WILLIAM A. BRENNAN

*vs.*

EASTERN CASUALTY INSURANCE COMPANY.

Androscoggin.      Opinion June 4, 1929.

*Herbert E. Holmes*, for plaintiff.
*Frank P. Preti*, for defendant.

SITTING: WILSON, C. J., DUNN, STURGIS, BARNES, PATTANGALL, FARRINGTON, JJ.

WILSON, C. J.   An action to recover sick benefits under an insurance policy issued by the defendant company. The evidence was taken out before the jury, but at the close of the evidence it was reported to this court by the Justice presiding.

The defense is that the policy was not in force at the inception of the plaintiff's illness. The policy was issued on March 31, 1924, and by its terms insured the plaintiff from 12 o'clock noon on said March 31 to 12 o'clock noon on the following day, and for such further time as the premiums paid by the insured as therein agreed should maintain it in force.

By the terms of the policy the premiums were made payable monthly in advance on the first day of each month in the amount of $3.85. If the premium was not paid as provided, the policy lapsed, but could be reinstated by the payment of the overdue premium, if accepted by the company. When reinstated, however, it covered only accidental injuries thereafter sustained, and such illness as occurred more than ten days after the date of acceptance. If the next premium became due within the ten days and was not paid, the policy again lapsed, and no liability on the part of the company accrued until again reinstated.

During a period of eight years, while the plaintiff had carried similar policies with the defendant company, he had permitted his policy to lapse more or less frequently and often for several months, and then was permitted by the company to reinstate it by merely paying a monthly premium. The evidence, therefore, does not present a case of all premiums in arrears having been paid from the inception of the policy.

In the fall of 1926 and spring of 1927, the plaintiff permitted the policy on which this action is brought to lapse for a period of eight months or from September, 1926, to May, 1927. On May

20, 1927, the plaintiff sent the company a check for the monthly premium of $3.85, which was accepted on May 23, and according to the receipt given was applied by the company in payment of the premium for the month of May.

On May 26, 1927, the plaintiff testified that he mailed a letter to the company, a copy of which was received in evidence, and in which he says that his receipt stated the premium forwarded was accepted for the month of May, and that premiums were due the first of the month. If this was the case, he requested that his payment of May 20 be applied on the June premium; or if not so applied that protection begin when his check was received. The company denied receiving this letter. At least no reply was made.

Payments of the monthly premium were afterward made by the plaintiff as follows: June 3, July 5, August 3, September 22, October 4 and November 1. The plaintiff was taken ill on October 3, 1927, and his period of disability lasted until November 17. It is for the benefits accruing during this period, if the policy was in force on October 3, that this action is brought.

Three questions are raised for the consideration of this court. First, the plaintiff claims that the defendant had by custom waived the provision of the policy requiring the premiums to be paid in advance on the first day of the month. The evidence does not sustain this claim. The policy expressly provides that the company may accept the premium, if not paid on the first day, with certain conditions as to non-liability for illness occurring within ten days of the acceptance of the payment. There is nothing to indicate that overdue premiums on this policy had ever been accepted by this company other than upon the conditions contained in the policy. The evidence does not disclose that the defendant ever paid benefits accruing during one of the periods while the policy had lapsed, except for illness originating while it was actually in force, or held out any inducement to the plaintiff that the payment of an overdue premium reinstated the policy from the first of the month in which it was paid. When the plaintiff paid one month's premium on May 20, 1927, it is clear from his testimony and the letter written May 26, 1927, to the company that he understood he was reinstating the policy from the date of payment, unless the company accepted it for the premium due on June 1.

Secondly, the plaintiff contends that by reason of the failure of the company to reply to the plaintiff's letter the defendant should be held to have applied the premium paid on May 20 to the payment due June 1, and, therefore, the payments made in June, July, August, September, and October paid in advance the premiums due on the first day of the month following the payment, so that the policy was in force at the inception of the plaintiff's illness on October 3.

This contention can not be sustained. The plaintiff gave no direction for the application of the premium when he sent it on May 20. Even if the company received the letter of May 26, and the evidence lacks the probative force to warrant such a finding against the direct denial of the defendant, the evidence clearly indicates that the company did not apply it on the June premium; and that the plaintiff must have known it was not so applied, and acquiesced in the defendant's application of this and the later payments to the month in which they were paid.

The plaintiff's receipts show that the payment made on May 20 was applied in payment of the May premium; the June payment, on the June premium; the July payment, on the July premium; the August payment, on the August premium; the September payment, on the September premium; and the October payment on the October premium. No objection to this application was made by the plaintiff during all this time. The plaintiff must be held to have assented to the application of the payments made by the company.

In fact the plaintiff in his letter indicated his acceptance of whatever action the company might take by requesting that, if not applied on the June premium, protection start from day check was received, or May 20.

His policy, therefore, lapsed July 1, August 1 and on September 1, 1927, and was not reinstated in September until the 22nd day. The payment made on September 22, however, extended the policy only to October 1, when the next payment became due, and would not cover illness occurring after October 1, unless the October premium was paid when due.

The policy lapsed again on October 1, and was not reinstated again until October 4, unless the plaintiff's third contention can be upheld, viz.: that the policy having been in force for a period of

three consecutive months, the plaintiff under Part 14 of the policy had ten days of grace within which to pay the premiums due on the first day of October, and during which ten days the policy remained in force. If this contention is sustained, the payment on October 4 being within the ten-day period, the policy did not lapse on October 1, but by the payments on October 4, and November 1, continued in force during all the period of the plaintiff's disability.

Neither can this contention be sustained. The three consecutive months that result in the ten days of grace must be three months in which the policy is continuously in force. If allowed to lapse during any one of the three months next prior to the month in which the ten days of grace is claimed, no period of grace results.

This follows from a reasonable intendment of such a provision. It is not reasonable that the parties intended that payments made long after they were due would give equal privileges with a strict compliance with the terms of the policy in making payments. Such a provision obviously was made to encourage prompt payments and not to promote laxity. That this is the true construction is also apparent when Part 14 is considered in connection with other provisions of the policy.

Part 3 of the policy provides:

"For each consecutive month immediately preceding the date of the accident that this Policy shall have been maintained in continuous force, ONE PER CENT shall be added to the original amount provided for any loss under Part 2 sustained by the Insured, but all such additions shall never exceed FIFTY PER CENT of such original amount."

Bearing in mind that the benefits under Part 3 are conditioned upon the policy being "maintained in continuous force" it is clear from the terms of Part 14 of the policy, in which appears the provision for the ten days of grace for the payment of premiums after the policy has been in force for three consecutive months, that the ten days of grace is also conditioned upon the policy being in force continuously for the period named. Under Part 14, if the condition is complied with, the policy continues in force during the ten days of grace, "except as to the benefits granted under Part 3." If the three consecutive months of life in Part 14 as a condition for the

period of grace does not mean continuous life without a lapse, then the exception in Part 14 of the benefits under Part 3 is meaningless ; since under Part 3 the benefits do not accrue unless the policy has been continuously in force for consecutive months, which obviously means without a lapse, unless the lapse has been waived, as, of course, it may be, and the policy treated as in force during all the period.

This policy, however, can not be held to have been continuously in force during the three months prior to October 1. The entire history of the transactions between the plaintiff and the company in relation thereto is contrary to such an understanding between them. The plaintiff had been accustomed to allow the policy to lapse for months and then by the payment of a single premium reinstate it without paying any of the premiums in arrears. The defendant company could not tell, if a payment was not made when due, whether the policy would be reinstated during that month or six months later. The policy by its express terms in case of reinstatement applies only to future accidents and illness occurring more than ten days after the acceptance of the payment. *Greenwaldt v. U. S. H. & A. Ins. Co.*, 102 N. Y. S., 157. The plaintiff knew what the provisions were as to the effect of the payment of overdue premiums. A payment after the first day of the month, therefore, under this policy, if accepted by the company, can not be held *ipso facto* to reinstate the policy in continuous force from the first day of the month in which it was paid.

The plaintiff in the case at bar, therefore, was not entitled to ten days grace for making the October payment, since for no month during the twelve last past had it been continuously in force.

It may be urged, however, that the insurance company gave no adequate benefits in return when it accepted an overdue premium on the 20th or 22nd of the month, unless it thereby is held to have waived the lapse and the policy is held to be in force from the first of the month ; neither did the insured lose anything by its being reinstated as of the date of payment, unless he was then ill or suffering from an injury, except the possible right to have the period of grace under Part 14 and the increased benefits under Part 3. In every instance under this policy the plaintiff in case an overdue payment was accepted received protection against future acci-

dents or illness occurring after ten days and until the next payment became due.

We think this case must be distinguished from the Bruzas case, 111 Me., 308. In that case, the insured had paid up all premiums in arrears, and his premium for the month during which he fell ill, was paid in advance. His policy was, therefore, in force at the inception of his illness. In the case at bar, the insured never paid his back premiums and his policy was not in force at the inception of his illness. In the cited case, it is true, the premium of the month following the inception of his illness, while due on the first day, was not paid until the 24th; the insurance company, however, as the court held, knew of his prior illness when it accepted the premium and also accepted and retained overdue premiums for succeeding months. The court held under these circumstances that having accepted and retained the premiums with full knowledge of the facts as to the illness of the insured, it should not be freed from liability, and that the acceptance of the overdue premiums was a waiver of the lapse and the policy must be held to have been continuously in force as to that illness from the first day of the month in which he was taken ill. To have held otherwise in that case would result in the retaining of premiums with no benefits accruing for sickness, as the policy provided that no benefits accrued for illness originating before the expiration of thirty days after the acceptance of an overdue premium. Under the policy in the case at bar, illness originating after ten days from the acceptance of the overdue premium is covered. The waiver in the Bruzas case, we think, could not have been extended to illness occurring during a period of lapse, of which illness the company had no knowledge when it accepted the overdue premiums. In other words, the policy was in continuous force only as to the particular illness of which the company had notice.

It is clear that when the defendant company in the case at bar accepted the October premium, it had no knowledge that the plaintiff was ill and so was not apprised of the consequences in case it waived the lapse. An insurer can not be held to waive a breach on the part of the insured when it does not have full knowledge of the facts and the consequences of such waiver. *Chasson* v. *Camp of Woodmen*, 127 Me., 151; *Handley* v. *Ins. Co.*, 127 Me., 361.

There being no facts shown that entitled the plaintiff in this case to claim that by making payments after they were due a lapse was waived and the policy should be treated as in continuous force, the parties must be held to be bound by the express terms of the policy of which the plaintiff admitted he had full knowledge. *Conway* v. *P. L. Ins. Co.*, 140 N. Y., 79, 83 ; *Gagne* v. *Mass. Bonding & Ins. Co.*, 78 N. H., 439, and an overdue premium accepted merely reinstated the policy as to future accidents and illness occurring after ten days.

Though by the terms of the policy the acceptance of a renewal premium on the first day of the month was optional with the company, its acceptance only extended the policy into the future. It had no effect on the past, except under the circumstances creating an estoppel or constituting a waiver of the provisions of the contract, which do not exist in this case.

The policy not being in force when his illness began, no benefits, therefore, accrued to the plaintiff under it by reason of such illness by the payment made November 1. *Greenwaldt* v. *U. S. H. & A. Ins. Co.*, supra ; *Gagne* v. *Mass. Bonding & Ins. Co.*, supra.

*Judgment for the defendant.*